## WISCONSIN REPORTS. 59

Madison, &c., Plank Road Co. vs. Watertown, &c., Plank Road Co.

## MADISON, WATERTOWN & MILWAUKEE PLANK ROAD COMPANY, Respondents,

*vs.*

## THE WATERTOWN & PORTLAND PLANK ROAD COMPANY, Appellants.

### APPEAL FROM THE JEFFERSON CIRCUIT COURT.

A corporation can exercise no powers except those which are expressly conferred by its charter, or are necessarily incidental to the objects and purposes of its creation.

A corporation created for the purpose of constructing a plank road between certain termini, has no power to loan money, or to become security for the loan of money.

When a corporation created for the purpose of building a plank road, guarantees the payment of a loan of money made by another corporation of like character, for the purpose of enabling it to build its road, the building of which would be advantageous to the former, and on default in the payment of such loan such guarantor pays the amount thereof; such guaranty being unauthorized, the payment creates no legal liability on the part of the corporation for whose benefit the payment is made.

The payment having been made by the corporation—the guarantor, without the scope of its corporate powers, for the benefit of the defendant, the latter is not estopped from setting up such want of power in the former to make the contract of guaranty.

Where the want of authority to contract, appears on the face of the complaint filed by a corporation, advantage may be taken of it by demurrer.

For further history of this case see 5th Wisconsin Reports, 173.

The subject matter of this suit has once before been before this court upon a different state of pleadings, and is reported in 5th Wisconsin 173. As the whole question depends upon the statements in the complaint, the same are set out in full. " And thereupon the said complainants complaining say, that the said Madison, Watertown & Milwaukee Plank Road

Company was created, incorporated and organized by and under the laws of the State of Wisconsin, for the purpose of constructing and maintaining a plank road from Milwaukee city to Watertown, and thence onward to Madison, the capital of the State of Wisconsin ; that the leading object of the creation of this last named company, was to ensure a good and passable and convenient highway, at all seasons, along the route aforesaid, from Milwaukee to Watertown and Madison, and to the district of country along the route generally, for the benefit of the public, and at the same time, to make the enterprise profitable in a pecuniary point of view, to the stockholders therein, as to make it for their interest, perpetually to maintain such road in good order; that by their original charter, they were incorporated under the name of the Lisbon & Milwaukee Plank Road Company, to build such plank road only from Milwaukee and Lisbon to Watertown ; that by their charter, as afterwards amended, they received their present corporate name and were authorized to continue their plank road to the capital at Madison aforesaid. That such amendment was procured to their charter, enabling them to extend their road so far, with a view to promote both the aforesaid main objects of their incorporation, to wit : To promote and increase the public advantage and convenience, and to render that portion of the road east of Watertown more profitable than it otherwise would be, by drawing upon it a business from a more distant portion of the State—that on the eighth day of June, 1852, they had progressed with their work so far as to have completed their plank road from said city of Milwaukee to Watertown in Jefferson county, Wisconsin ; that it was believed and known that the construction of a plank road onward from Watertown in a westerly direction towards Madison aforesaid, would contribute greatly to the business and profitableness of their plank road, so far as aforesaid already constructed from Milwaukee to Water-

town; that in the meantime to wit: before June, 1852; another company, to wit: the Plank Road Company constituting the defendants in this bill, was incorporated and organized under the laws of said State of Wisconsin—first under the name of the Watertown, Hubbellville, Portland & Waterloo Plank Boad Company, and afterwards, by an amendment of their charter, under the name of the Watertown & Portland Plank Road Company—for the purpose of constructing and maintaining a plank road westwardly from Watertown, along a route, and through a district of country so nearly identical with that along and through which said complainants were authorized to extend their road from Watertown westward, that the two roads, if both completed, would inevitably have greatly injured, and lessened the value of each other to the stockholders, while the public would have derived comparatively but trifling advantage therefrom, above what it would receive from the building of one of those roads only, and it was deemed nearly immaterial as to the profitableness of the road of these complainants, by which company the extension of a plank road west of Watertown should be made; that the franchises of said Watertown & Portland Plank Road Company were possessed and controlled, chiefly by citizens of the immediate neighborhood through which they proposed to build their road, and who, from their residence, were most deeply interested in the success of the extension, and were resolved to push on their road; that said complainants had no interest hostile to the other company aforesaid, but rather an interest in common with it; that said complainants therefore determined to leave the field west of Watertown, at least temporarily, to said other company, and to assist them in all lawful ways to construct their road for the purpose of securing in it an important auxillary to their own road east of Watertown, thus accomplishing indirectly in encouraging the other road, what they believed they could not so well effect

by extending their own road beyond Watertown, both with a view to the enhanced and permanent value of their own stock and to the public convenience, thus to enable them to proceed with the building of their said road; the Watertown & Portland Plank Road Company needed and desired to effect a loan of money to the amount of four or five thousand dollars; that to effect such loan, they opened negotiations with one John Cramer and others; that the last named company were feeble. and had not got a well established and well known character for responsibility, and could not effect the said desired loan at the time on such terms as they were willing to make, without the aid or guaranty of some other responsible company or individuals; that one John Cramer and Harvey Birchard were at the time willing to make the required loan to the said Watertown & Portland Plank Road Company, provided they could have a valid endorsement or guaranty assignment by said company, but not otherwise; that for the end and purpose of assisting said Watertown & Portland Plank Road Company, and at their earnest solicitations, thus securing the immediate construction of a plank road westerly from Watertown, practically in extension of their own road, and thus promoting in the most economical mode within their reach the leading object of their own incorporation; the said Madison, Watertown & Milwaukee Plank Road Company entered into an arrangement or agreement with the said Watertown & Portland Plank Road Company, in substance to assist the latter named company to effect their needed loan of four thousand dollars from said John Cramer and Harvey Birchard by guarantying and securing the payment thereof, principle and interest, to the satisfaction of the said Cramer and Birchard; that thereupon said negotiation was accomplished, and by the aid of said complainants, said Watertown & Portland Plank Road Company effected a loan from the said Cramer and Birchard of four thousand dollars:

And did actually on or about said eighth day of June, 1852, borrow and receive from said Cramer and Birchard said loan of four thousand dollars in good and lawful money, to be repaid at the end of four years, with interest annually thereon, at the rate of twelve per cent. per annum, and the said complainants then and there in consideration thereof, and at the request of the said Watertown & Portland Plank Road Company, agreed to and with said Cramer and Birchard to guaranty the payment of, and actually to pay the sum, principal and interest, when the same should become due and payable, and to secure such payment to the satisfaction of said Cramer and Birchard; that said Watertown & Portland Plank Road Company as a part of the same transaction, also agreed to give security by their personal obligations and by a valid mortgage on their road, which was to be given directly to said complainants, and to be made on their face transferable, so that said complainants could, at their option hold the same and give a separate security alone to said Cramer and Birchard, to satisfy them in the premises, or transfer the same with their endorsements, or guaranty or other security to said Cramer and Birchard, to be held and collected directly by them: that accordingly the said Watertown & Portland Plank Road Company then existing and acting under the name and style of the Watertown, Hubbelville, Portland & Waterloo Plank Road Company, in consideration of the premises, and for the purpose of securing the repayment of the said sum of four thousand dollars so loaned to them by the said Cramer and Birchard, executed and delivered to said complainants their certain instruments in writing, or simple bills, bearing date on said June 8th, 1852, and in and by one of which said instruments the said Watertown & Portland Plank Road Company then existing as aforesaid, in the name of the Watertown, Hubbelville, Portland & Waterloo Plank Road Company, in substance acknowledged themselves to owe to the said com-

plainants or bearer, for money borrowed, the sum of one thousand dollars, and promised to pay that sum to said complainants or bearer in four years from the date thereof, with interest thereon annually, at the rate of twelve per certum per annum, at the office of said complainants in Milwaukee, and in case any default should be made in the payment of. any of the installments of interest or any part thereof, for the space of thirty days after the same should become due and payable by the terms thereof, then, in that case, that the whole principal sum should be deemed due and payable, anything in that instrument to the contrary, notwithstanding; and furthermore that such obligation or instrument, and all rights and benefits arising therefrom, might be transferred by general or special endorsements, or by delivery, as if the same were a note of hand, payable to bearer, and waiving all benefit from any stay, valuation or appraisement law: and in testimony thereof, the said Watertown & Portland Plank Road Company, under their said original name, caused to be affixed to the last named instrument, or simple bill, their corporate seal, and the same to be subscribed by their president and secretary, and in and by the second of which simple bills, the said Watertown & Portland Plank Road Company, under their original corporate name aforesaid, in substance acknowledged themselves to owe to the said complainants or bearer, for money borrowed, two thousand dollars, and promised to pay the same to the said complainants or bearer, in four years from the date thereof, with interest thereon, payable annually at the rate of twelve per cent. per annum, at the office of said complainants, in Milwaukee, and agreed that in case default should be made in the payment of any installments of interest, or any part thereof, for the space of thirty days after the same should become due and payable by the terms thereof, then, in that case, the whole principal sum should be deemed due and payable, anything to the contrary in that instrument

contained, notwithstanding; and furthermore agreed that the last named obligations and all rights and benefits arising therefrom, might be transferred by general or special endorsement, or by delivery, as if the same were a note of hand, payable to bearer, and waived all benefit of any stay, valuation or appraisement law, and in testimony thereof the last named instrument was executed and authenticated by them, by causing their corporate seal to be affixed thereto, and the same to be subscribed by their president and secretary, and in and by the third of which simple bills the said Watertown & Portland Plank Road Company, under their original corporate name aforesaid. in substance acknowledged themselves to owe the said complainants or bearer, for money borrowed, one thousand dollars, and promised to pay that sum to said complainants or bearer, in four years from the date, with interest on that sum, payable annually, at the rate of twelve per cent. per annum, at the office of said complainants, in Milwaukee, and agreed that in case any default should be made in any installment of interest, or any part thereof, for the space of thirty days after the same should become due and payable, then the whole principal sum should be deemed due and payable, anything in that instrument contained to the contrary notwithstanding; and further, that the obligation and all rights and benefits arising therefrom might be transferred by general or special endorsement, or by delivery, as if the same were a note of hand payable to bearer, and waived all benefits of any stay, valuation or appraisement; which last named instrument was also executed and authenticated by them, by causing their corporate seal to be thereunto affixed, and the same to be subscribed by their president and secretary, all of which, from inspection of the said instruments, or simple bills, now ready to be produced and proved as this court shall direct, will more fully and at large appear, and the said complainants further say that the said Watertown & Portland Plank

Road Company, under their said original corporate name, in order the more fully to secure the repayment of the moneys above, to wit: The principal and interest agreed to be paid in and by the said several instruments in writing or simple bills, did at the same time execute under their corporate seal and deliver to said complainants a certain indenture of mortgage, bearing even date with said simple bills, in consideration of the said loan and of the action of complainants in procuring said loan as aforesaid, and conditioned for the repayment of said sum of four thousand dollars at the time and in the manner hereinbefore mentioned, according to the terms of the said several simple bills, and in and by such mortgage did grant, bargain, sell and convey to the said complainants or their assigns, all of their plank road extending from the western limits of the former village of Watertown to the western toll-gate of their said road in the town of Portland, and all the stock, property, real and personal franchises and tolls, with all the appurtenances to them belonging in fee: And which mortgage was expressly conditioned for the payment to the said complainants or their assigns, of the said sum of four thousand dollars with interest, payable according to the conditions and tenor of the aforesaid three simple bills, at the office of said complainants, in the city of Milwaukee, which said mortgage was duly acknowledged, and was afterwards duly recorded as a mortgage in the office of the Register of Deeds for Jefferson County, in the State of Wisconsin, on the 9th day of June, A. D., 1852, at 6 o'clock, P. M., of that day, in volume VIII of Mortgages, on pages 1 and 2, as by the said mortgages and the certificates thereon endorsed will more fully appear.

And the said complainants further state, that in consideration of said loan of money by said Cramer and Birchard to said Watertown & Portland Plank Road Company, they, the said complainants, did actually make and give to said Cramer and

Birchard such a guaranty and security as they desired and required for the payment of said sum of four thousand dollars and interest, at the times when the same should fall due by the aforesaid three simple bills and they intended to make also a legal and sufficient transfer and assignment to said Cramer and Birchard of the said simple bills, and mortgage, so as aforesaid given by said Watertown & Portland Plank Road Company, and did actually place the same in the hands of the said Cramer and Birchard, or of the agent of them, or one of them, under the belief that such delivery constituted a sufficient transfer of the same in law, since the said simple bills were made payable to bearer, but they were afterwards advised that a transfer of the same on the books of their company or some other *formula* should, under the circumstances, have been added to make the assignment complete, and the title thereto of the said Cramer and said Birchard perfect, so as to enable them or either of them to enforce the same by suit, in their or his own name. And upon such advice, said complainants resumed possession of said simple bills and mortgage, with the consent of said Cramer and Birchard, and have ever since held and owned and now hold and own the same; that after said four thousand dollars became due and payable, according to the terms of the original contract aforesaid, according to the tenor of the said simple bills and mortgage, the said complainants paid the whole amount thereof, with interest, to said Cramer and Birchard, as they had agreed and obligated themselves to do, as aforesaid; that the money so paid by them was so paid entirely on behalf of said Watertown & Portland Plank Road Company, and upon account of the said loan so made by said Cramer and Birchard, to the last named company, and entirely for the benefit of that company and upon no other account, and in the course of no other business whatever: That said money so loaned as aforesaid was borrowed by and loaned to said Watertown & Portland

68 WISCONSIN REPORTS.

Madison, &c., Plank Road Co. vs. Watertown, &c., Plank Road Co.

Plank Road Company for their own use and benefit entirely, and was paid and delivered by said Cramer and Birchard, either personally or by the hand of their agent, directly to the last named company, and the whole thereof was received by that company and used and enjoyed by them alone, without consulting said complainants, except that they agreed to expend the same in constructing their said Plank Road westward from Watertown, as aforesaid. And no part of that money was ever received or controlled by said complainants, nor did they, the said complainants, ever receive any compensation from said Watertown & Portland Plank Road Company in the premises or derive any, the least advantage from such loan, directly or otherwise, than by the building of said road of said other company which incidentally benefitted the road of said complainants as aforesaid. And they, the said complainants, have never been reimbursed in any part or in any degree, for the money which they so paid to said Cramer and Birchard, upon account of, and for the benefit of said Watertown & Portland Plank Road Company, for the principal and interest of said loan, nor have they, the said complainants, any security for their re-imbursement, except the said three simple bills and mortgage so as aforesaid given by said Watertown & Portland Company.

And the said complainants are advised and believe that though by the terms of the act of their incorporation they are not specially empowered to engage in the business of borrowing and loaning money, or to aid others in borrowing money for business, foreign to the objects of their creation, nevertheless that they have a general power by virtue of the nature of their corporate existence to do either of these acts whenever it shall be necessary or convenient to do so for the purpose of carrying out and promoting the leading objects of their incorporation. And that in aiding the said Watertown and Portland Plank Road Company to procure said loan as

## WISCONSIN REPORTS. 69

Madison, &c., Plank Road Co. vs. Watertown, &c., Plank Road Co.

aforesaid, and in taking security from said last named company as aforesaid, and in giving security to said Cramer and Birchard, the said complainants acted in good faith and according to their best discretion, to secure the interest of their own company, and solely to promote the aforesaid leading objects of their incorporation and for no other object or purpose whatever; and moreover said complainants aver that the said means so used by them to promote those objects and purposes are not unusual, but are such as are very frequently employed by corporations created for similar purposes for similar ends, and were moreover in this case extremely convenient and useful to said complainants and to all interests in the road aforesaid.

And these complainants aver and charge the fact to be that though the said simple bills and mortgages were given as aforesaid directly to them, they were so given purely and only as aforesaid in consideration of said loan so made by said Cramer and Birchard, and of the undertaking of these complainants to procure such loan to be made, and to satisfactorily secure said Cramer and Birchard in the premises as aforesaid, and for the purpose of enabling these complainants to procure such loan as aforesaid; that the money so loaned as aforesaid was not nor was any part thereof the money of the complainants, but the money of said Cramer and Birchard; that said loan was in substance and in fact a loan by said Cramer and Birchard, and not by these complainants to said Watertown & Portland Plank Road Company, although it is true, that said Cramer and Birchard were not willing to let the money go upon such security as the last named company could give, and required their security to be given directly by said complainants; that said complainants gave the security which they did give as aforesaid to said Cramer and Birchard, for and on behalf of and at the express request of said Watertown & Portland Plank Road Company; that upon and by the

security so given as last aforesaid, these complainants have been compelled to pay and have paid to said Cramer and Birchard, the full sum, principal and interest of the said loan, which on June 8th, 1856, to wit: on the date when these complainants paid the sum as aforesaid, amounted to the full sum of five thousand seven hundred and eighty dollars, and no part thereof has been paid or re-imbursed to these complainants, and they hereby state upon their best information and belief, that the full sum of four thousand dollars, to wit: the whole principal sum mentioned and secured by the said simple bills and mortgage, together with the interest on that sum, from the said eighth day of June, 1852, at the rate of twelve per cent. per annum, still remains due and unpaid by said Watertown & Portland Plank Road Company to the complainants; that no proceedings at law have been had to recover the sum or any part thereof, nor has any part thereof been collected, though these complainants further aver and state that they have often demanded the payment of the same from said Watertown & Portland Plank Road Company, and they paid the same as aforesaid to said Cramer and Birchard; and these complainants believe and therefore further state that said James Prentiss, Theodore Prentiss, Daniel Jones, William Chappell, Peter V. Brown, Henry Mulberger and Daniel Hall have or claim some interest in said mortgaged property, but only as subsequent purchasers or incumbrancers, whose claims, if valid, are subject to the lien and claim of said complainants, and further state upon their best information and belief, that the said plank road of the said Watertown and Portland Plank Road Company has not been and is not kept in good condition and repair, but has been and is allowed to gradually decay; that the same is already of far less value than it was at the date of said simple bills, and mortgage; that at this time, as they are informed and believe, it is clearly insufficient in value to satisfy their said debt

WISCONSIN REPORTS. 71

Madison, &c., Plank Road Co. vs. Watertown, &c., Plank Road Co.

and the costs of this suit; that were the same sold for a fair price in cash, under a decree for the complainants in this suit, there must still be a large deficiency unsatisfied, for the payment of which these complainants are advised that they would have no security whatever, except the personal liability of said Watertown & Portland Plank Road Company, which in that case, would be entirely insolvent and worthless and unable to pay any portion thereof, and that said defendants, James Prentiss, Theodore Prentiss, Daniel Jones, William Chappell, Peter V. Brown, Henry Mulberger, and Daniel Hall, or some of them, either personally or by their servants or their agents are in actual possession of the last mentioned road, and in receipt of the tolls and profits thereof which are expressly mortgaged to these complainants as aforesaid.

The bill prayed for an injunction, receiver and a judgment of foreclosure.

Defendants demurred as follows :—

The Demurrer of the Watertown & Portland Plank Road Company : James Prentiss, Theodore Prentiss, Daniel Jones, Peter V. Brown, and Henry Mulberger, defendants, to the bill of complaint of the Madison, Watertown & Milwaukee Plank Road Company, complainants :

These defendants, by protestation, not confessing or acknowledging all or any of the matters or things in the said complainants' bill to be true in such manner and form as the same are therein set forth and alleged, do demur thereto, and for cause of demurrer show :

1. That the said complainants have not, in and by their said bill, made or stated such a case as does or ought to entitle them to any such discovery or relief as is thereby sought or prayed for, from or against these defendants.

2. That it appears in and by the said bill, that the said complainants are a body corporate, created, incorporated and organized by and under the laws of the State of Wiscon

sin, for specific purposes only, and that it does not appear in and by the said bill, that the transactions of the said complainants therein mentioned, by virtue of which they therein claim the right of said action against these defendants, are or were in the usual, necessary, proper, legitimate or rightful course of the said complainants' business, or that they have or had any power, express or implied, to do those acts, in the said bill of complaint mentioned, by virtue of which they therein claim or pretend to be the owners of the simple bills and mortgage in the said bill of complaint set forth.

3.   That it appears in and by the said bill of complaint that the said complainants are a body corporate, created and existing under the laws of the State of Wisconsin for specific purposes only, and it also appears in and by the said bill of complaint, that the transactions of the said complainants, by virtue of which they therein claim the right to maintain the said action against these defendants, are not and were not in the usual, necessary, proper, legitimate, or rightful course of the said complainants' business, and that the said complainants have or had no power, express or implied, to do these acts in said bill of complaint mentioned, or any of them by virtue of which they therein claim or pretend to be the owners of the simple bills and mortgage in the said bill of complaint described.

4.   That it does not appear in and by the said bill of complaint, that there has been or was any legal delivery of the said simple bills and mortgage, or that the same ever had any legal existence.

5.   That it appears in and by the said bill of complaint that there never has been a legal delivery of the said simple bills and mortgage, and that they never have had a legal existence.

6.   That there is no consideration mentioned in the bill of complaint for which it is therein alleged that the said

WISCONSIN REPORTS. 73

Madison. &c., Plank Road Co. vs. Watertown, &c., Plank Road Co.

simple bills and mortgage were delivered to the said complainants.

7. That it does not appear in and by the said bill that the said complainants are the legal and equitable owners of the said simple bills and mortgage.

8. That it appears in and by the said bill of complaint that the said defendants, the Watertown & Portland Plank Road Company, borrowed of John Cramer and Harvey Birchard, in the said bill of complaint named, the sum of four thousand dollars, in the said bill of complaint mentioned, and that the said simple bills and mortgage were made and executed, and placed in the possession of the said complainants for the purpose of being used and delivered to secure to the said Cramer and Birchard, or to their heirs and assigns, the payment of the said principal sum of four thousand dollars and the interest thereon, in the said bill of complaint mentioned, but it does not appear in and by said bill of complaint that the said simple bills and mortgage or any one of them were ever delivered to the said Cramer and Birchard, or to either of them, or to any person or persons, or body corporate authorized to receive or accept of a delivery of the same for them or in their behalf, or for or in behalf of either of them.

9. That it does not appear in and by the said bill of complaint, that the security and guaranty given as is in the said bill of complaint stated by the said complainants to the said Cramer and Birchard, was a legal and valid security and guaranty that could be enforced at law or in equity.

10. That it does not appear in and by the said bill of complaint, that the said security and guaranty was given by the said complainants to the said Cramer and Birchard at the time the said sum of four thousand dollars was borrowed by the said Watertown & Portland Plank Road Company from the said Cramer and Birchard.

11. That if there ever was a legal delivery of the said

simple bills and mortgage, or if the same ever had a legal existence, it appears in and by the said bill of complaint, that the said simple bills and mortgage have been fully paid, satisfied and discharged.

12. That it does not appear in and by the said bill of complaint, that at the time the said complainants paid the said Cramer and Birchard, the said sum of four thousand dollars and the interest thereon mentioned in the said bill of complaint, that the said complainants were legally or equitably bound to pay the same or any part thereof.

The demurrer was overruled and the defendants appealed.

*D. Hall,* for the Appellant.

In the bill it is expressly admitted that complainants are not empowered to lend, or aid others in borrowing money. Hence it is the whole draft of the bill to escape from the legal consequences of this important admission and show that the transaction in question is within the implied powers of their incorporation. To accomplish this purpose the bill presents a few facts, a multitude of legal conclusions and arguments to enforce its conclusions of law.

Aside from what is said of the making and delivering of the contracts themselves, the facts are these: that complainants, by their original charter, were empowered to construct a road from Milwaukee to Watertown, and by an amendment to the same to continue it to Madison; that the Watertown and Portland Plank Road Company was incorporated to construct a road westward from Watertown to Portland, so near the proposed route of complainants' road, that if both were built they would mutually diminish each other's profits. Hence the bill argues the case at length, that without assuming the franchise conferred by the amendment to extend their road to Madison, by virtue of such amendment and the *nature* of their corporate existence, complainants acquired or pos-

sessed the power to guaranty to a company, admitted to be wholly separate from and independent of their own, the loan in question, for the reason that, as stated in said bill, the building of the Watertown and Portland road promoted the two leading objects of their incorporation, to wit: it would increase the *profits* of the Milwaukee and Watertown road, and promote the *Public convenience.*

As this will be a leading case among the decisions of this court, it is of vast importance to the State, as well as to the defendants, that the powers of this corporation should be tested by the correct legal standard. As the law moves upon great considerations and the application of general principles to particular cases, if the test attempted to be applied to the case in question be correct, then complainants by the very nature of their corporate existence, may do anything that will increase their profits, and at the same time promote the *public convenience.* A more arrogant assumption was never made in defence of the usurpations of a soulless corporation. All kinds of legitimate business, if properly managed, tends to profit, and when conducted on a large scale promote the public convenience. Nor does it help the matter that complainants would apply this principle to the region contiguous to a route from Milwaukee to Madison. If it could guaranty a loan for one road it could guaranty a loan for another. It would not be confined to Plank Roads. All the towns and cities through which it passed, or which might be at its *termini,* could be the recipients of its favors, to build Plank Rail, or any kind of roads, grade streets or for anything that would promote the public *convenience,* provided it was *profitable.*

The fact that the Legislature incorporated the two Plank Road Companies with their routes situated as stated in the bill, indicates that they deemed both roads necessary, and intended that they should be built. Whether it was so on

account of natural obstacles, or to prevent monopoly, it is not for us to inquire. The Legislature incorporated them to build roads in accordance with the franchises of their charter, and not to guaranty loans.

Corporations are creatures of law, and when created for specific purposes, they have no power to turn aside from those purposes, and they have no ability to enforce contracts which they had no power to make. And this logical deduction of the law is enforced by the weightiest considerations of public policy and the soundest principles of morality. Even human selfishness may with safety be left to combat the grasping usurpations of incorporations and compel them to respect the law of their existence. A strict construction of corporate powers by our courts will teach officers that they are accountable to corporators—and corporators that they cannot with impunity over-ride the policy of the law. Any other course is fraught with public danger.

The defendants believe that the whole doctrine for which they contend is clearly recognized by the decision of this court when the simple bills and mortgage in question were first before this court. It is the general doctrine recognised by all courts of final resort, that a corporation for specific purposes, cannot enforce a contract which it had not power to make. *Angells & Ames* on corporations, §§ 111, 256, 258, 273, 391, 232; Kent's Commentaries 298; *Bank of Augusta vs. Earl*, 13 Pet. R., 587, 88, 89; *Bank of the United States vs. Danbridge*, 12 Wheaton, 68; *Hand & Armory vs. Providence Ins. Co.*, 2 Cranch, 127; *Dartmouth College vs. Woodward*, 4 Wheaton, 636; *The People vs. Utica Insurance Co.*, 15 Johnson, 383; *N. Y. Firemens' Insurance Co., vs. Ely*, 2 Cowen, 699 and 709; *McCulloch vs. Moss*, 5 Denio, 567; *N. Y. Firemens' Ins. Co., vs. Ely*, 5 Cow. 568, 3; Barn & Ald. 12; *Beach vs. Fulton Bank*, 3 Wend 583; 25 Wend, 649; *Talmage vs. Pell*, 3 Selden, 328;

*Penn & Co., vs. Dandridge*, 8 Gill & John, 348, 318, 319, 320; *Albright vs. Balk. Rapp. S. P. Co.*, 1 Maryland Ch. Decisions, 549 ; *Perrune vs. Ches. & Del. Canal Co.*, 9 Howard, 184; *Bangor Boom Co., vs. Whitney*, 29 Ware, 123 ; *Madison, Watertown and Milwaukee P. R. Co., vs. W. & P. P. R. Co.*, 5 Wis., 173.

Complainants rest the case upon the fact that they were guarantors and have paid the loan—they had no money to invest—they do not show that the guaranty complied with the statute of frauds, and even if it set up the same consideration set forth in the bill, no Court would ever have enforced it against them—as to the delivery of the contracts in question when complainants got them they did not know what to do with them.

*Levi Hubbell*, for the Respondents.

1. The plaintiffs had the rights of corporations generally ; could sue, defend, contract and do all acts incident to corporations, except to "issue notes to circulate as money." See charter, Session Laws 1846, pages 59 to 61, sections 2 and 20.

2. The defendants had full right and power to borrow money, and to give the bills and mortgage in question, it being done for the construction of their road. Angel & A. on Corporations, §§ 256 and 264 ; 5 Barr's Rep., 345; 1 Cowen, 513; 5 Hill, 138; 4 J. Ch. Rep., 373 ; 82 Eng. Com. Law, 830; Hill, 37.

3. The defendants have had the money, for which these bills and the mortgage were given, for a lawful purpose; and it is inequitable and fraudulent for them now to set up the act of the plaintiff, in aiding them to get the money, or in paying it when it became due to Cramer and Birchard, to defeat a recovery upon their mortgage. The plaintiffs incapacity is none of their business. 2 Harris, 82–3 ; 16 Mass., 102; 11 Ohio, 489 ; 2 Conn., 252–3 ; Smedes & Marshall, 173–4 ; 7

Howard Miss. Rep.; 7 Serg't & Rawle, 313; 4 John. Ch. R., 373, 19, 22; 9 Mass., 423; 5 Manning & Granger, 131, 192; 44 Eng. Com. Law, 109–10; *Bank of Chilicothe vs. Swain et. al.,* 8 Ohio, 252; 6 Hill, 37; 5 Hill 137; 5 Manning & Gr., 110.

4. The acts of the plaintiffs, in guarranteeing and paying the money for the defendants, and in taking the present mortgage, were not *illegal;* not prohibited by their charter, or by any law of the State; if not actually authorized by their charter, they were simply *ultra vires.*

Though the courts might not enforce this contract if *executory,* they will not interfere since it is *executed,* and the defendants have reaped all its benefits. 32 Eng. Com. Law, 572; 2 Excheq. R., 711; *Fishmungers Co. vs. Robinson;* 5 Man. & Granger, 131, 192; 4 Ellis & Bl., 397, (30 Eng. Com. Law Rep., 20;) 6 Howard Miss. R, 669.

Section 2 of the charter is as follows: "The corporation hereby created, shall possess power to contract, buy, sell, pass by-laws, and transact all business pertaining to said corporation; also to sue and be sued, in and by the name of said company."

Section 20 is as follows: "Said company shall not issue any certificate of deposit, or any other evidence of debt to circulate as money, under the penalty of forfeiting their charter." (See section 4, as to the general powers of the directors, laws of '48, p. 29.

*By the Court,* WHITON, C. J. However ungenerous it may seem, (to give the conduct of these defendants no harsher name,) for the defendants to refuse to pay the money which the plaintiffs have paid on their guaranty, we are of opinion that this bill cannot be sustained. The charter of the

plaintiffs conferred only the ordinary powers necessary for the purpose of constructing their road. It gave no more. Indeed, it is not contended that the guaranty which the plaintiffs acquired was expressly authorized by the charter; but it is contended, that as the guaranty was made for the purpose of enabling the Watertown & Portland Plankroad Company to construct their road " westwardly from Watertown along a route and through a district of country so nearly identical with that along and through which said complainants were authorized to extend their road from Watertown westward " that the power to make the guaranty for such a purpose may be fairly inferred from the general powers given to build their own road.

We do not think that the facts stated, authorize any such inference. The complainants were authorized by their charter, and the amendments made to it, to construct their road from Milwaukee to Madison. They had completed the road from Milwaukee as far as Watertown, on the way to Madison. Instead of building the road between the last two named places, they (as stated in the bill) " determined to leave the field west of Watertown, at least temporarily, to the other company." That is to say, the complainants signed a guaranty for the purpose of enabling the Watertown & Portland Plankroad Company to borrow money with which to construct a road westwardly from Watertown, on a route nearly identical with their own, and abandoned, at least temporarily, the construction of the remainder of their road.

It is to be remembered that the bill does not allege that the route of the road which the Watertown & Portland Plankroad Company was to construct, extended to Madison, or that the road was in any way intended to connect the last mentioned town with Watertown or Milwaukee. In our opinion, the signing of the guaranty by the complainants, for the purpose stated in the bill, was clearly without authority, and created

no legal obligation.   It has not been contended by the com-
plainants that a corporation could enforce a contract which it
was not authorized to make by its charter;   we shall there-
fore cite but few authorities upon the contrary doctrine.
Angell & Ames on Corporations. §§ 111, 256, 258, 273, 391,
392, 393; *Bank of Augusta vs. Earle,* 13 Pet. R., 587;
*People vs. Utica Insurance Co.,* 15 I. R., 383; *Bank of U.
S. vs. Danbridge,* 12 Wheat., 68 ; *Dartmouth College vs.
Woodward,* 4 Wheat., 368.

But the counsel for the complainants contends that " the
defendants have had the money for which the bills and mort-
gage were given, for a lawful purpose;   and it is inequitable
and fraudulent for them now to set up the act of the plaintiff
in aiding them to get the money or in paying it when it
became due to Cramer and Birchard, to defeat a recovery upon
their mortgage."

We do not think this view of the matter changes the legal
rights of the parties.   The plaintiff of course was aware of
the extent of its own power.   Those who managed the affairs
of the corporation must have known that it had no authority
to guaranty the payment of the notes or bonds of third per-
sons, and that if they attempted to do so, no legal obligation
could result from such attempt.

The payment of the money under such circumstances by
the plaintiff was a payment in their own wrong, for which
they cannot charge the defendants.   The counsel for the com-
plainants also claims that this contract of the complainants
has been executed, and that, as it was not illegal, but at least
only unauthorized by the charter of the company, the court
should not now interfere to set it aside, after the defendants
have reaped all its benefits, although, perhaps, it could not
have been enforced.   We cannot view the matter in this light.
The contract, so far as it is relied upon for the purpose of
affecting the defendants, is not executed, but executory merely.

It is the foundation of the first action. The complainants seek to recover upon it, and upon it alone. We must regard it as wholly insufficient to authorize the action, and must therefore reverse the order of the circuit court. Order reversed and cause remanded for further proceedings.