WILLIAM C. RENFROW, *as Governor and Chairman,* THOMAS J. LOWE AND E. D. CAMERON, *as Secretary, Composing the Board for Leasing School Lands in the Territory of Oklahoma,* v. B. R. GRIMES, J. A. MURPHY, A. T. WILSON, YOUNG SHORT, J. E. LOVE, J. T. WORD, I. T. PRYOR, G. T. HUME AND W. E. HERRING.

(Filed February 18, 1898.)

SCHOOL LANDS—*Lease—Term of.* The governor, secretary and auditor of Oklahoma, as the board for leasing the school, college and public building lands of said Territory, are not authorized, under the acts of congress and the rules prescribed by the secretary of the interior, to lease any of said lands for a longer period than three years; consequently cannot accept an application to lease a portion of such lands for a period of five years and thereby compel the persons making such application to comply with the terms and conditions thereof.

(Syllabus by the Court.)

*Error from the District Court of Woodward County; before Frank Dale, District Judge.*

*H. S. Cunningham, Attorney General,* for plaintiffs in error.

*Huston & Marum* and *R. J. Ray,* for defendants in error.

This action was brought by plaintiffs in error, as the board for leasing school lands in the Territory of Oklahoma, against defendants in error for damages in the sum of $3,291.75, for an alleged breach of contract arising out of an application on the part of defendants, (which was accepted by plaintiffs,) to William C. Renfrow, chairman of said board, to lease some fifty-seven sections of school, college and public building lands, lying in said county of Woodward, and west of range 13 of the Indian Meridian. The application made by defendants and accepted by plaintiffs, omitting the description of the various sections of land applied for, is in words and figures as follows, to-wit:

APPLICATION TO LEASE SCHOOL LAND.

"WILLIAM C. RENFROW, Governor and Chairman of the Board for Leasing School Lands, Guthrie, O. T.

*Sir:* We, Grimes & Murphy, Wilson & Short, Love & Word, Prior & Hume, W. E. Herring, (each one-fifth,) being over 21 years of age and not holding any school land in Oklahoma Territory, do hereby apply to lease, under the act of congress, and the resolution of the legislative assembly, the following described tract of school land in Woodward county, Oklahoma Territory, to-wit:" (Here follows a description by numbers, township and range of the fifty-seven sections of land applied for, which

are sections 13, 16, 33 and 36 of several different town-ships lying west "of range 14 of the Indian Meridian," for the term of five years from the first day of January, 1895, for which I hereby agree to pay as follows: $470.25 cash; $1,410.75 December 15, 1895; $1,881.00 December 15, 1896; $1,881.00 December 15, 1897; $1,881.00 December 15, 1898; $1,881.00 December 15, 1899.

"The following is a description of the natural charac-ter of said land: Grazing land. Each party stands good for one-fifth of above.

(Signed)    "1. P. L. HERRING,
            "2. WILSON & SHORT, by A. T. WILSON,
            "3. PRIOR & HUME, by W. E. DANIEL,
            "4. GRIMES & MURPHY, by A. T. WILSON,
            "5. J. E. LOVE.

                    "P. O. Woodward, O. T.,

"Dated June 21, 1895.

"County, Woodward, Territory of Oklahoma."

Defendants filed a general demurrer to plaintiffs' peti-tion, which was sustained by the court, and plaintiffs re-move the cause into this court by petition in error.

Opinion of the court by

KEATON, J.: The sole question presented for determina-tion in this case is whether or not plaintiffs in error, as the board for leasing the school, college and public build-ing lands of this Territory, had the power under the acts of congress and the rules prescribed by the secretary of the interior, to execute a lease with such conditions as to comply with the terms of the application made by de-fendants in error.

It is provided in both secs. 18 and 36 of the act of March 3, 1891, "that the school land reserved in the Territory of Oklahoma by this and former acts of congress may be

leased for a period not exceeding three years, for the benefit of the school fund of said Territory, by the governor thereof, under regulations to be prescribed by the secretary of the interior." (26 Stat. at Large, 1026 and 1043.)

In pursuance of the authority given by said act, the secretary of the interior, among others, prescribed the following rules:

"1. The governor shall execute the leases for such period as he may deem best, in the several cases, not exceeding three years in any case.

"2. The quantity of school land in Oklahoma to be leased to any one person, under the thirty-sixth section of the act of March 3, 1891, shall not exceed one quarter section, except in the country composed of Beaver, D, E, F, G and H counties, and the Cherokee Outlet, west of range 13 of the Indian Meridian, when the same shall have been opened to settlement, in which country the maximum quantity allowed to be leased shall be one section, or 640 acres." (See page 16, Rules of Board for leasing school land, published May 1, 1897.)

In sec. 10 of the act of March 3, 1893, authorizing the opening to settlement of the Cherokee Outlet, it is provided among other things that:

"But in any opening of same to settlement, secs. 16 and 36 in each township, whether surveyed or unsurveyed, shall be, and are hereby reserved for the use and benefit of the public schools to be established within the limits of such lands, under such conditions and regulations as may be hereafter enacted by congress. * * And the president of the United States, in any order or proclamation which he shall make for the opening of the lands for settlement, may make such other reservations of lands for public purposes as he may deem wise and desirable. The president of the United States is hereby authorized, at any time within six months after the approval of this

act and the acceptance of the same by the Cherokee Nation as herein provided, by proclamation, to open to settlement any or all of the lands not allotted or reserved, * * subject to * * the whole of section 18 of the act of March 3, 1891." (27 Stat. at Large, 642.)

In his proclamation of August 19, 1893, opening said Cherokee Outlet to settlement, the president of the United States declares that "excepting also that section 13, in each township which has not been otherwise reserved or disposed of, is hereby reserved for university, agricultural college and normal school purposes, subject to the action of congress; excepting also that section 33, in each township which has not been otherwise reserved or disposed of, is hereby reserved for public buildings; excepting also sections 16 and 36 in each township which are reserved by law for the use and benefit of the public schools." (28 Stat. at Large, 1229.)

It is further provided in the act of congress of May 4, 1894, entitled "An Act to ratify the reservation of certain lands made for the benefit of Oklahoma Territory," etc.

"That the reservation for university, agricultural college, and normal school purposes, of section 13 in each township, of the lands known as the Cherokee Outlet, the Tonkaway Indian reservation, and the Pawnee Indian reservation, in the Territory of Oklahoma, not otherwise reserved or disposed of, and the reservation for public buildings of section 33 in each township of said lands, not otherwise disposed of, made by the president of the United States in his proclamation of August 19, 1893, be, and the same are hereby, ratified, and all of said lands and all of the school lands in said Territory may be leased under such laws and regulations as may be hereafter prescribed by the legislature of said Territory; but until such legislative action, the governor, secretary of the Territory, and superintendent of public instruction, shall

constitute a board for the leasing of said lands under the rules and regulations heretofore prescribed by the secretary of the interior, for the respective purposes for which the said reservations were made, except that it shall not be necessary to submit said leases to the secretary of the interior for his approval." (281 Stat. at Large, ch. 68, p. 71.)

The only action ever taken by the territorial legislature in regard to the leasing of said land was the passage of Council Resolution No. 16, of the third legislative assembly, approved March 8, 1895, which reads as follows:

"Be it Resolved by the Legislative Assembly of the Territory of Oklahoma:

"That in case the legislative assembly fails to enact legislation governing the leasing of lands subject to lease in· this Territory, the present board having control of leasing of public lands be and are hereby authorized to continue the leasing of such public lands: *Provided*, also, they are authorized to lease lands lying west of range 14 in such quantities as in their judgment may be most ad-·vantageous to the public interest." (Session Laws, 1895, p. 273.)

Under the foregoing enactments and rules, it is clear that said board had no power to make a lease for a longer period than three years. We think that plaintiffs in their official capacity as members of this board, can no more enter into a contract (which will be valid and binding) beyond the scope of the authority conferred upon them by statute than can a public or private corporation; and no rule of law is better settled than that such corporation can only execute a valid lease, or other contract, when authorized so to do by statute. (Beach on Contracts, sec. 1097; *Pen. R. Co. v. St. Louis, etc. R. Co.*, 118 U. S. 290; *St. Louis, etc. R. Co. v. Terre Haute, etc. R. Co.*, 145 U. S. 393; *Thomas v. West Jersey*, 101 U. S. 71.)

In the case last cited it is said: "We take the general doctrine to be in this country, though there may be exceptional cases and some authorities to the contrary, that the powers of corporations organized under legislative statutes are such and such only as those statutes confer."

Then, can plaintiffs, as such board, recover damages against defendants for a failure to perform an alleged contract which said plaintiffs had no legal authority to make? We think not. In fact, the proposition made by defendants through their application to lease, was never, in any legal sense, accepted by plaintiffs, for the reason that the latter, being positively forbidden to lease, for a greater period than three years, any of the lands described in said application, had not the power to accept same in the terms stated therein; and it will not do to hold that the attempted acceptance on the part of plaintiffs constitute a valid and binding contract of lease for three years, (the period for which said board was authorized to lease,) because the additional two years time called for in said application was doubtless a material portion of the inducement and consideration which caused defendants to make same. In other words, the proposition made by defendants would have to be accepted as a whole before they could be bound thereby. This plaintiffs had no legal authority to do, and, consequently, no valid contract between the parties to this action was ever created. The agreement alleged to have been entered into between plaintiffs and defendants was entirely executory, hence no question of equitable estoppel arises in the case.

Finding no error in the record, the judgment of the district court is affirmed.

Dale, C. J., having presided in the court below, not sitting; all the other Justices concurring.